**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

TONYA FRANCE,                                                        Case No. 1:11-cv-184

        Plaintiff,                                            Beckwith, J.
                                                                        Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Tonya France filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents five claims of error, all of which the Defendant disputes. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In December 2003, Plaintiff filed an for application Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of July 14, 2003 due to both physical and mental impairments. After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On November 29, 2006, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 973-1006). On May 7, 2007, ALJ Deborah Smith denied Plaintiff's application in a written decision and Plaintiff filed a request for review with the Appeals Counsel. The case was remanded by the Appeals Counsel in November 2008.

The Appeals Counsel also consolidated the remanded case with a second set of applications Plaintiff filed earlier in 2008.  (Tr. 25, 500-04).

ALJ Smith conducted a remand hearing on May 12, 2009, at which Plaintiff, William T. Cody, an impartial vocational expert, and Walter C. Hulon, M.D., a medical expert, testified.  (Tr. 1007-1083).  Thereafter, ALJ Smith issued another unfavorable decision on June 22, 2009.  (Tr. 42).

The record on which the ALJ's decision was based reflects that Plaintiff was 28 years old on her alleged disability onset date, and a high school graduate.  (Tr. 41).  She had past relevant work a hand packer and nurse's aid.  (Tr. 40).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "obesity; status post total right hip arthroplasty in 1998; degenerative joint disease of the left knee; back impairment; carpal tunnel syndrome; right knee problem; depression, personality disorder; anxiety, and bulimia." (Tr. 28).  The ALJ concluded that none of Plaintiff impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform sedentary work, with the following nonexertional limitations:

> She can lift up to 10 pounds; stand and/or walk for at least 2 hours in an 8-hour work day and no more than 4 hours; and sit about 6 hours in an 8-hour workday.  She is limited in her ability to push and/or pull with the lower extremities and can occasionally climb ramps/stairs and stoop.  She should never climb ladders/ropes/scaffolds, kneel, crouch, or crawl.  She is limited to frequent fingering (fine manipulation) and feeling with the right hand.  She should avoid concentrated exposure to vibration, and to hazards such as machinery/heights.  She should avoid highly complex work or work with strict production quotas/standards and should only do work that involves superficial contact with others and which involves no interaction with the general public.

(Tr. 30).

Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform his past relevant work, she can nonetheless perform jobs that exist in significant numbers in the national economy. (Tr. 40, 41-42). Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and is not entitled to DIB or SSI. (Tr. 42).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff maintains that the ALJ erred by: 1) failing to properly follow agency regulations in weighing the opinion evidence; 2) failing to provide hypothetical questions to the vocational expert that accurately portrayed Plaintiff's impairments; 3) failing to consider Plaintiff's ability to performed sustained work activity; 4) failing to consider Plaintiff's use of a cane and need to elevate her legs throughout the day; and 5) failing to properly address whether Plaintiff's impairments met or equaled the requirements for Listings 1.04 and 1.03. Upon careful review and for the reasons that follow, the undersigned finds Plaintiff's assignments of error are not well-taken as the ALJ's decision is supported by substantial evidence.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her

3

past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the

Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

*1. Consideration of Plaintiff's RFC Assessment*

The majority of Plaintiff's assignments of error essentially assert that the ALJ's RFC finding is not supported by substantial evidence because the ALJ improperly rejected the functional limitations found by Plaintiff's treating sources, Dr. Elwert and Dr. Martinez. Specifically, Plaintiff asserts that the ALJ's RFC assessment failed to consider the restrictions found by Drs. Elwert and Martinez relating to Plaintiff's use of her hands; her need to elevate her legs; her use of a cane; her inability to stoop; her need to sit/stand at will and her inability to work without excessive absences. Plaintiff further asserts that the ALJ's hypothetical questions to the vocational expert failed to accurately portray Plaintiff's impairments and that the testimony of the vocational expert conflicted with the information

found in the Dictionary of Occupational Titles (DOT). Plaintiff's assertions will be addressed in turn.

### A. Relevant Evidence

Dr. Elwert, Plaintiff's treating chiropractor since 2002, completed an RFC assessment wherein he diagnosed cervical and lumbar disc herniations and osteoarthritis with fair prognosis. (Tr. 406). He lists her symptoms as pain in the cervical spine with radiation to left arm and L/S versus the left leg. (*Id.*). He also notes pain with activities of daily living, dropping things with lifting and numbness in the legs with standing and sitting. He opines Plaintiff can walk a 1/2 block without rest or severe pain; sit 10 minutes; and stand 25 minutes. He further opines that in an 8 hour day Plaintiff can sit for less than 2 hours total and stand/walk less than 2 hours total in an 8 hour workday. Plaintiff will need periods of walking every 30-minutes for 10-minutes at a time; an alternate sit/stand option; and the need for unscheduled breaks twice a day for 20 minute intervals. (Tr. 406-408). He limits her to lifting and carrying less than 10 lbs frequently and never 10 lbs or above; rarely twisting, stooping and bending; no crouching, squatting or climbing ladders and stairs (Tr. 409). He also limits her handling, fingering and arm manipulation to 25% of the day bilaterally and she would miss more than four (4) days per month as a result of the impairments or treatment. *Id*. at 410.

In November 2008, Dr. Martinez, Plaintiff's primary care physician, completed a Physical Residual functional capacity questionnaire, wherein he listed Plaintiff's diagnoses as T11-12 herniated disc; lumbar radiculopathy protruded discs L4-5/L5-S1, lumbar DDD, Osteoarthritis of the hip; lumbar facet arthropathy; Carpal tunnel syndrome right wrist, and osteoarthritis of hips. He opined that Plaintiff could sit for fifteen minutes at a time and for

6

about two hours out of eight; could stand for about fifteen minutes at a time and for less than two hours total; needed to walk for five minutes every fifteen minutes; needed to take unscheduled breaks during the workday; and needed to elevate her legs above her heart for about four hours of sitting out of eight. (Tr. 942). He also opined that Plaintiff could not lift any weight; could never look down and otherwise move her head only occasionally; could never twist or crouch; and could occasionally climb stairs. (Tr. 943). He further indicated that Plaintiff could never use her right hand, fingers or arm. (Tr. 944). Dr. Martinez indicated that Plaintiff would miss more than four days of work per month. (Tr. 944). Dr. Martinez further opined that Plaintiff's pain and symptoms are severe enough to constantly interfere with attention and concentration needed to perform even simple work tasks, that she is incapable of even "low stress" jobs, that she can only walk without rest or severe pain less than 1 block, and that she needs to take unscheduled breaks every day (Tr. 940).

### B. ALJ's Decision

In formulating Plaintiff's RFC, the ALJ rejected the limitations set forth above, and instead gave controlling weight to Dr. Hulon, the medical expert who testified at the administrative hearing.[1] Dr. Hulon testified that Plaintiff's obesity contributed to her knee, hip and back problems. (Tr. 1040-41, 1050). He explained that diagnostic investigation

---

[1] At the administrative hearing, Plaintiff's counsel objected to the testimony of Dr. Hulon, based on his alleged lack of qualifications to testify on matter outside his field of practice. (Tr. 1055-1065). Plaintiff's statement of errors notes that she objects to Dr. Hulon's expert testimony but does provide any supporting evidence or otherwise expand upon this argument. (Doc. 6 at 8). Because Plaintiff does not fully develop this assertion the undersigned finds such argument to be waived. Notwithstanding this determination, upon careful review, the undersigned also finds that Dr. Hulon is properly qualified to served as a medical expert in this matter. Dr. Hulon is board certified in Occupational Medicine and Aerospace Medicine. (Tr. 1057). Dr. Hulon also completed his residency in neurosurgery. (Tr. 1058).

7

showed no deterioration in Plaintiff's hip. (Tr. 1041-42). Dr. Hulon also pointed out that the diagnostic testing showed no neurologic consequences from Plaintiff's back or neck arthritis (Tr. 1045-47, 1065-69). He also indicated that Plaintiff's carpal tunnel syndrome had improved and was a "minimal issue" (Tr. 1048-49). The ME opined that Plaintiff did not meet any Listing. (Tr. 1051–52). Dr. Hulon agreed with Dr. Torello's opinion of Plaintiff's functionality.[2] (Tr. 1052-53). He disagreed with Dr. Martinez's opinion, noting that Dr. Martinez essentially found Plaintiff to be bed-ridden and that this was belied even by Plaintiff's presence at the over-ninety-minute hearing. (Tr. 1054). He disagreed that Plaintiff needed to elevate her legs above her heart and noted that it was inconsistent with her allegations of back pain. (Tr. 1054).

The ALJ provided a thorough analysis of the medical evidence of record and concluded that Dr. Hulon's testimony was well-supported by the overall record and provided an accurate assessment of Plaintiff's functional limitations. (Tr. 37). As detailed below, the undersigned finds the ALJ's decision to be substantially supported in this regard.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir.

---

[2]In October 2008, Dr. Torello, a state agency physician, reviewed Plaintiff's medical file and found that Plaintiff could: lift ten pounds; stand/walk for no more than four hours out of eight; sit for roughly six hours in a work day; and not use foot controls without an accommodation (Tr. 790-91). She also opined that Plaintiff could occasionally stoop and climb stairs and ramps, but could never perform other postural changes. (Tr. 791). Dr. Torello further indicated that Plaintiff could use her right hand for frequent fingering and feeling, and should avoid exposure to vibrations (Tr. 792-93).

8

2004). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record "means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected.*" Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4 (emphasis added). "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416.927(d)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004).

Contrary to Plaintiff's assertion, the ALJ's decision indicates that he properly considered the opinion evidence in accordance with agency regulations and controlling law. First, the ALJ reasonably concluded that Dr. Martinez' extreme limitations were not supported by the evidence of record. Plaintiff appears to assert that Dr. Martinez' assessment is supported by his diagnoses of T11-12 herniated disc; lumbar radiculopathy; protruded discs L4-5/L5-S1, lumbar DDD, lumbar facet arthropathy, carpal tunnel syndrome right wrist, and osteoarthritis of hips. Plaintiff also notes Dr. Martinez' purported clinical findings which include tenderness, pain, paralumbar spinals with palpation and restricted range of motion to 90 degrees FF, moderate spasms of legs, positive straight leg raise bilaterally, motor decrease in legs, and sensation reduced in the legs. (Tr. 939-40). However, such evidence of record fails to support the extreme functional limitations found

by Dr. Martinez. It is well established that a mere diagnosis or catalogue of symptoms does not indicate the functional limitations caused by the impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146,151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment).

Notably, Dr. Martinez' finding of lumbar radiculpathy was not supported by any clinical findings or diagnostic testing. The record did not contain evidence of a nerve root impingement on imaging studies nor contain evidence of focal neurological deficits. (Tr.38). MRI's showed little or no progression in her back condition. (Tr. 37). There is also no support in the record for Dr. Martinez' assertion that Plaintiff must elevate her legs above her heart 50% of an 8-hour day. To the contrary, the medical expert testified that such limitation would be difficult for Plaintiff and would result in pain to due her back impairments. (Tr. 1054).[3] With respect to Plaintiff's hand and fingering limitations, nerve conduction testing in March 2008 showed mild carpal tunnel in Plaintiff's right wrist, with normal findings in her left wrist. (Tr. 633-34). The record also indicates upon examination, Plaintiff' had normal motor strength and showed no evidence of muscle atrophy. (Tr. 38).

Next, the ALJ properly discounted Dr. Martinez's assessment because his limitations were inconsistent with Plaintiff's own testimony and reported daily activities. Notably, in 2008, Plaintiff reported walking 1 -2 miles and riding a bicycle several times a week in an attempt to lose weight. (Tr. 38). Treatment notes contained in the record also repeatedly mention that Plaintiff was walking without difficulty on physical examination. As noted by

---

[3] With respect to Plaintiff's use of a cane, her statement of errors also asserts (without elaboration) that Plaintiff's "back and neck pain, dependence on a cane and need to elevate her legs, further restrict her mobility and would erode the job base." Plaintiff's unsupported allegation is not well-taken. Moreover, as explained below, the undersigned properly considered Plaintiff's use of a cane in determining that Plaintiff's impairments did not meet or equal Listings 1.04 or 1.02A.

the Commissioner, such activities of daily living were inconsistent with someone who could only stand/walk for less than two hours out of eight and for fifteen minutes at a time. Because Dr. Martinez' findings were not supported by objective evidence and were inconsistent with the record evidence as a whole, the ALJ properly discounted his findings. *See Cutlip,* 25 F.3d at 287. Accordingly, the ALJ's decision is substantially supported in this regard and should not be disturbed.

Additionally, with respect to Dr. Elwert, chiropractors are not granted the same status as other licensed medical practitioners under the rules governing social security claims. 20 C.F.R.§ 404.1513 (2003). Notably, only the opinions of treating physicians falling under the category of "acceptable medical sources" are entitled to deference, and a chiropractor does not fall under the regulation's definition of an "acceptable medical source." SSR 06–03p ("[O]nly 'acceptable medical sources' can be considered treating sources ... whose medical opinions may be entitled to controlling weight."); see 20 C.F.R. § 416.913(d)(1). Accordingly, the ALJ was under no obligation to afford any heightened deference to the findings of Dr. Elwert. *See Lucido v. Barnhart*, 121 F. App'x 619, 621 (6th Cir. 2005). In any event, the ALJ's decision indicates that he considered Dr. Elwert's treatment notes and findings. (Tr. 32). As with Dr. Martinez' limitations, Dr. Elwert's functional assessment was not supported by clinical findings and was contradicted by Plaintiff's own testimony and reported daily activities, including walking 1-2 miles and riding a bicycle several times a week.

As detailed above, the ALJ provided a lengthy and detailed recitation of Plaintiff's medical history, citing to treatment records, facts about activities of daily living, and diagnostic test results. (Tr. 31-39). The ALJ's decision also accurately set forth the opinion

evidence. (Tr. 34-38). Accordingly, the undersigned agrees with the Commissioner that the ALJ's decision reasonably balanced the evidence in concluding that Plaintiff could perform a reduced range of sedentary work. Accordingly, Plaintiff's assignments of error are overruled in this regard.

2. *Listings 1.03 and 1.04*

Plaintiff further argues that the ALJ failed to properly evaluate whether her impairments met or equaled the requirements of Listings 1.03 and 1.04.[4] Listing 1.03 requires evidence of "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b...." Listing 1.00B2b provides:

> (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities....
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping or banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of an assistive device does not, in and of itself, constitute effective ambulation.

---

[4] Plaintiff references Listing 1.04 in the heading of subsection F (*See* Doc. 6 at 18), however, she does not offer any additional argument with respect to this Listing. Accordingly, Plaintiff's unsupported argument with respect to Listing 1.04 should be overruled.

12

*Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 645 (6th Cir. 2006) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b).

Here, relying on the testimony of Dr. Hulon, the ALJ determined that Plaintiff did not meet Listing 1.04 or 1.02A. Listings 1.02A and 1.04 also deal with musculoskeletal impairments and require Plaintiff to establish an inability to ambulate effectively. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.00(B)(2)(b), 1.02, 1.04. The ALJ found that Plaintiff ambulated effectively with one cane and was able to perform her activities of daily living. (Tr. 28). Plaintiff, however, argues that she meets the requirements of Listing 1.03 due to her right and left knee arthroplasty procedures and resulting pain in her hip and thigh areas. Plaintiff further asserts that the medical expert did not specifically address Listing 1.03. Plaintiff's assertions lack merit.

The undersigned recognizes that Plaintiff had knee surgeries in 2007 and 2008. However, notwithstanding such surgeries, in order to meet the requisite Listing, Plaintiff must establish an inability to ambulate effectively. As noted by the Commissioner, no doctor ever prescribed an assistive device like the kind contemplated above, and no doctor ever found that Plaintiff was unable to walk to the degree required by the Listings. Similarly, there was no evidence in the record of any physician opining that Plaintiff's combination of impairments medically equaled Listing 1.03. To the contrary, the ME and multiple reviewing and examining physicians opined, explicitly or implicitly, that Plaintiff was able to ambulate effectively. Accordingly, the ALJ's decision is substantially supported in this regard.

    3. *Vocational Evidence*

Plaintiff also asserts that the ALJ's hypothetical question to the vocational expert

failed to consider Plaintiff's hand impairments resulting from carpal tunnel syndrome. Plaintiff further maintains that the VE's testimony setting forth the jobs that Plaintiff could perform conflicted with Dictionary of Occupational Titles. Plaintiff's assertions lack merit.

### A. Carpal Tunnel Syndrome

Plaintiff argues that the ALJ's hypothetical questions to the vocational expert failed to include limitations relating to her lack of bilateral manual dexterity. However, the Sixth Circuit has repeatedly made clear that a hypothetical question need only reference plaintiff's *credible* limitations; unsubstantiated complaints are not to be included in the question. *See McKenzie v. Commissioner of Soc. Sec.*, 215 F.3d 1327 (6th Cir. 2000).

As explained above, the ALJ relied on the ME's testimony and the 2008 EMG findings of only mild carpal tunnel on the right side and no abnormality on the left side. (Tr. 633-34, 1048-49). Dr. Martinez' findings were not supported by objective evidence or clinical findings and therefore not entitled to deference. Here, the ALJ selected hypothetical questions which accurately described Plaintiff's limitations and the extent of her ability to perform work as supported by the evidence. The VE's testimony in response - setting forth the many numbers of jobs that Plaintiff can still perform - thus constitutes substantial evidence that Plaintiff is not disabled. *See Hammond v. Apfel,* No. 99-1451, 2000 WL 420680, at *8 (6th Cir. Apr. 12, 2000).

### B. Conflict with Dictionary of Occupational Titles (DOT)

As noted above, the ALJ's hypothetical question included a limitation of frequent fingering (fine manipulation) and feeling with the right hand. The ALJ further found that Plaintiff "should avoid highly complex work or work with strict production quotas/standards and should only do work that involves superficial contact with others and which involves no

interaction with the general public." (Tr. 30). Based upon the functional limitations contained in the ALJ's hypothetical questions, the vocational expert testified that Plaintiff would be able to perform jobs as an assembler, inspector, and security system monitor. However, Plaintiff asserts that according to the DOT, such jobs require heightened manual dexterity and require individuals to be capable of more than simple or repetitive tasks. Thus, Plaintiff maintains that the vocational expert's testimony conflicted with the information contained in the DOT and therefore the ALJ's step-five analysis is not supported by substantial evidence. Plaintiff's assertions are unavailing.

SSR 00-4p requires an ALJ to affirmatively inquire about "any possible conflict" between the evidence offered by a VE and information provided in the Dictionary of Occupational Titles (DOT), the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations. *See Conn v. Secretary of Health & Human Services*, 51 F.3d 607, 610 (6th Cir.1995). The Sixth Circuit has held that "the ALJ was within his rights to rely solely on the vocational expert's testimony. The Social Security regulations do not require the Secretary or the expert to rely on classifications in the Dictionary of Occupational Titles." *Conn v. Secretary of Health and Human Services*, 51 F.3d 607, 610 (6th Cir.1995). In *Conn*, the expert described certain jobs as sedentary which the DOT classified as light or medium. Nevertheless, the court held that "the ALJ may rely on the testimony of the vocational expert even if it is inconsistent with the job descriptions set forth in the Dictionary." *Id.*

Thus, "[a]n ALJ may rely on vocational expert testimony notwithstanding contrary conclusions in the DOT if the expert is found to be credible, *Barker,* 40 F.3d at 795, and the

question posed to the expert accurately reflects the claimant's physical and mental limitations." *Strong v. Social Sec. Admin.*, 88 Fed.Appx. 841, 846-847, 2004 WL 232242,**5 (6th Cir. Feb. 3, 2004) (citing *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir.1987).

Here, consistent with the SSR 00-4p, the ALJ asked the vocational expert if his testimony was consistent with the DOT. (Tr. 1003 ). Plaintiff's counsel did not question the vocational expert with respect to the DOT and/or bring any inconsistencies to the ALJ's attention. Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct. *Martin v. Commissioner of Social Security,* 170 Fed. Appx. 369, 374, 2006 WL 509393, **5 (6th Cir. 2006) Furthermore, even if there is a conflict between the expert's testimony and the DOT, "neither the DOT or [the expert's testimony] automatically trumps when there is a conflict." *Id.* (quoting SSR 00-4p). Here, the ALJ specifically asked if there was a conflict and the uncontradicted testimony of the vocational expert indicated that no conflict existed.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                   */s Stephanie K. Bowman*
                                   Stephanie K. Bowman
                                   United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TONYA FRANCE,   Case No. 1:11-cv-184

    Plaintiff,   Beckwith, J.
        Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).